SILER, Circuit Judge.
George Kutlenios petitions for review the district court’s granting summary judgment for UnumProvident Corp. and Robert A. Correa. Kutlenios sued Unum when the company rescinded his disability insurance policy and subsequently sued Correa, the insurance broker, for negligence during the insurance application process. The district court granted Unum’s motion pursuant to the terms of the insurance contract and later granted Correa’s motion because the suit was barred by the statute of limitations. For the following reasons, we affirm the district court’s ruling on Unum’s motion and reverse the district court on Correa’s motion.
I.
A.
On March 1, 2004, Kutlenios applied for disability income insurance from Unum with the help of his insurance agent Cor-rea, who had sold Kutlenios insurance related to Kutlenios’s business for the past fifteen years. Kutlenios attested on the application that he had read the application and his answers to the questions on the application and that his answers were true, complete and correctly recorded on the application. He also acknowledged that he understood that if his answers were incorrect or untrue that Unum could deny his benefits or rescind his policy. But Kutlenios left unanswered the medical *552 information portion of the application, which asked 20 questions about his health.
Unum rejected Kutlenios’s application because the medical information section was incomplete. It returned the application to Correa with instructions to complete the application. Kutlenios’s application was resubmitted to Unum with all of the questions answered “no” with the exception of question nine, which was still unanswered. One of the questions on the application with the answer “no” was, “Have you ever been diagnosed by a member of the medical profession as having or treated for ... injury, disease or disorder of the spine, neck, back, extremities, including muscles, bones, joints, amputations or any chronic painful condition, neuritis, neuralgia or neuropathy, sciatica, arthritis or gout?”
Subsequently, Unum contacted Kutlen-ios for a “phone history interview” as part of the application process. The Unum agent asked Kutlenios questions about his health including the unanswered question nine, which read “Have you, in the last five years, seen any doctor or medical practitioner not otherwise listed on this application?” Kutlenios answered “no.”
Based on the information provided on the application, Unum issued Kutlenios a disability policy that was effective on May 20, 2004. Unum tendered the policy to Correa, who gave it to Kutlenios. The policy contained an “incontestability clause” that prevented Unum from denying Kutlenios benefits because of a misstatement or omission on the application two years after the policy’s effective date, with the exception for fraudulent misstatements or omissions.
On June 15, 2006, two years and three weeks after the policy’s effective date, Kutlenios filed a claim for disability benefits. He stated he was suffering from “ankylosing spondylitis” (A/S), a type of arthritis that causes vertebrae in the spine to fuse together. The physician statement from Dr. David Schwartz that accompanied the claim revealed that Kutlenios first saw Dr. Schwartz for A/S on April 9, 2003, nearly a year before Kutlenios applied for his policy.
After receiving the claim, Unum sought more information about Kutlenios’s medical history. Unum’s investigation revealed that Kutlenios sought treatment for A/S in 1998. It also discovered a December 5, 2000 x-ray and a May 23, 2001 report that indicated that Kutlenios was suffering from spinal issues consistent with A/S. A June 28, 2001 report noted symptoms “consistent with [Kutlenios’s] history of [A/ S],” and a July 3, 2001 medical record contained an x-ray report that confirms Kutlenios was suffering from A/S.
In March 2007, Unum denied Kutlen-ios’s benefits claim and rescinded his policy based on his misstatements on his application regarding his medical history.
B.
Kutlenios sued Unum for his benefits and Correa for malpractice. The district court granted summary judgment to Unum because of Kutlenios’s material misrepresentations and omissions in his insurance application and to Correa because Kutlenios filed suit beyond Michigan’s statute of limitations.
II.
This court reviews rulings on motions for summary judgment de novo. Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 611 (6th Cir.2009). In a diversity case, we apply the law of the forum state and federal procedure law. Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir.2009). In Michigan a policy may be rescinded, “when the insured makes a *553 material misrepresentation in the application for insurance. A misrepresentation is material if the insurer would have charged a higher premium or not accepted the risk had it known the true facts.” Old Life Ins. Co. of America v. Garcia, 411 F.3d 605, 611 (6th Cir.2005) (citations omitted).
“Common law has always permitted the avoidance of a contract procured by means of fraud,” Wiedmayer v. Midland Mut. Life Ins. Co., 414 Mich. 369, 324 N.W.2d 752, 755 (1982) (citation omitted). Fraud occurs when a someone knowingly makes a materially false representation or recklessly makes a materially false representation without regard to its veracity with the intent that the statement be relied on by another party and that other party suffers an injury. Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 247 N.W.2d 813, 815-16 (1976).
Michigan insurance brokers must be licensed. M.C.L. § 500.1201a. And malpractice claims against state licensed professionals accrue “at the time [the licensed professional] discontinues serving the plaintiff ... as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.” M.C.L. § 600.5838. Malpractice claims may be filed at any time within two years after the claim accrues, M.C.L. § 600.5805(6), or “within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.” M.C.L. § 600.5838. If the claim is not filed within the prescribed time periods then it is barred. Id.
III.
A.
Kutlenios’s Claim Against Unum
In Michigan an insured is charged with knowledge of the information in an insurance application. See Ruggirello v. Detroit Automobile Inter-Insurance Exchange, 272 Mich. 44, 260 N.W. 787, 788 (1935).
Kutlenios omitted the fact on his application that he was suffering with A/S. He had suffered from A/S for several years before he applied for a disability policy. Kutlenios’s physician for his disability claim stated that he first saw Kutlenios for A/S on April 9, 2003, nearly a year before Kutlenios applied for his policy. When the application asked if he had ever been diagnosed or treated for an injury, disease or disorder of the spine, neck, back, or any chronic painful condition he answered “no.”
Unum stated it would not have issued a policy to Kutlenios if it had known about his A/S. Thus, Unum suffered an injury when it relied on Kutlenios’s misstated medical history.
Since it is clear that Kutlenios falsely answered questions to obtain his disability policy, it is unnecessary to analyze the “incontestability clause” to rescind the policy. The district court’s ruling is affirmed.
B.
Kutlenios’s Claim Against Correa
Whether Kutlenios can pursue a claim against Correa depends on when that claim accrued. The district court ruled that under Michigan’s two-year statute of limitations Kutlenios had until May 20, 2006 — two years after the policy was issued — to bring a claim and under the state’s six month “discovery” statute of limitations he had until September 2007— six months after Unum denied Kutlenios’s benefits — to file suit. Kutlenios filed his lawsuit against Correa on March 26, 2008.
Kutlenios argues that his claim against Correa did not accrue until Unum rescind *554 ed the policy in 2007. Because Correa attempted to help Kutlenios receive his benefits he continued to serve Kutlenios and did not end his services for Kutlenios until the policy was rescinded. Therefore, Kutlenios argues, the two-year period did not begin until 2007 and would expire in 2009, which is after he filed his lawsuit against Correa. We agree.
Levy v. Martin, 463 Mich. 478, 620 N.W.2d 292 (2001), and Morgan v. Taylor, 434 Mich. 180, 451 N.W.2d 852 (1990), hold that when a professional provides routine, periodic, or related services, a claim of liability does not accrue until the services end. Correa continued to serve Kutlenios by helping Kutlenios pursue benefits under his disability policy. Kutlenios also claims he continued to be one of Correa’s clients for other insurance purposes, and thus he had a “continuing professional relationship” as described in Levy, 620 N.W.2d at 296, and Morgan, 451 N.W.2d at 859. And at the summary judgment stage we must accept Kutlenios’s claim. See Bletz v. Gribble, 641 F.3d 743, 757 (6th Cir.2011) (“we view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant.”).
In Morgan, the court held that “the matter[ ] out of which the claim ... arose” was not one discrete eye exam, but rather the whole relationship. 451 N.W.2d at 856. In Levy, it was not one discrete tax return, but rather the whole relationship. 620 N.W.2d at 297. Here, it was not one discrete insurance policy, but rather the whole relationship. Based on the record and Michigan’s broad view of professional relationships, the relationship between Kutlenios and Correa was ongoing well past the time when Unum denied the claim. Therefore, under Michigan case law, the statute of limitations does not bar Kutlenios’s claim against Correa.
AFFIRMED in part, REVERSED in part and REMANDED to the district court for proceedings consistent with this opinion.