# STATE OF MICHIGAN

# COURT OF APPEALS

---

JGM TRANSPORTATION, INC., d/b/a JGM
MACHINERY MOVERS AND ERECTORS, and
CARL JENNINGS,

        Plaintiffs-Appellants,

v

LEWIS & KNOPF CPAS, P.C., and KIM
LINDSAY,

        Defendants-Appellees.

UNPUBLISHED
February 24, 2015

No. 318032
Genesee Circuit Court
LC No. 12-097822-NM

---

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

In this accounting malpractice action, plaintiffs, JGM Transportation, Inc., and Carl Jennings, appeal by right the trial court's order granting the motion for summary disposition by defendants, Lewis & Knopf, CPAs, P.C. and Kim Lindsay.[1] The trial court determined that the claims by JGM Transportation and Jennings were time-barred and dismissed their complaint under MCR 2.116(C)(7). Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

In October 2008, Lewis & Knopf agreed to provide accounting services to JGM Transportation and Jennings. Lewis & Knopf sent a retention letter to JGM Transportation and Jennings that delineated the scope of the services to be provided; the letter provided, in pertinent part, that JGM Transportation "has asked our firm to perform 'other accounting services' for the year ended December 2008." The retention letter included provisions regarding the potential for audits of the returns that Lewis & Knopf prepared: "[i]f an examination occurs, we will represent the corporation if you so desire . . . ." Finally, the retention letter addressed the preparation of future tax returns: "The terms of this letter will continue to apply to the preparation of the above returns with respect to subsequent years, unless amended or terminated in writing . . . ."

---

[1] For ease of reference, we shall refer to defendants collectively as Lewis & Knopf.

On September 15, 2009, Lindsay completed and e-filed individual and corporate 2008 tax returns for Jennings and JGM Transportation. In October 2009, Lewis & Knopf billed JGM Transportation and Jennings for the services. The invoice specifically stated: "This Concludes our Engagement for the Preparation of Your 2009[2] Financial Statements and Tax Returns." On October 22, 2009, Lewis & Knopf billed Jennings and his wife for the preparation of their individual 2008 tax returns. This invoice similarly included a statement that "[t]his Concludes our Engagement for the Preparation of Your 2008 Tax Returns."

Sometime in 2010, JGM Transportation replaced Lewis & Knopf and began using Richard Pagac for accounting services. Pagac prepared 2009 tax returns for JGM Transportation and Jennings. While reviewing records, Pagac discovered errors in the 2008 tax returns. Pagac advised Jennings that he would likely be audited and the IRS did, in fact, audit JGM Transportation and Jennings.

Although Jennings testified at his deposition that the IRS contacted him in 2010, he averred that he did not receive notice of the audit until early 2011. On April 27, 2011, Lewis & Knopf received correspondence from the IRS requesting information. Jennings also contacted Lindsay to inform him of the impending audit. During this conversation, Lindsay allegedly admitted that a mistake was made in the 2008 tax returns. Jennings testified that, by the time he received notice of the audit from the IRS, he had already replaced Lewis & Knopf with Pagac as his accountant. The IRS concluded the audit on May 23, 2011.

On March 15, 2012, JGM Transportation and Jennings sued Lewis & Knopf and Lindsay for professional negligence and breach of contract.[3] They alleged, among other things, that Lewis & Knopf negligently included deductions in the 2008 tax returns for aircraft depreciation. As a result, JGM Transportation and Jennings maintained that they incurred damages, which included the payment of taxes, penalties, and interest, the payment of costs associated with the audit proceedings, and emotional distress.

In January 2013, Lewis & Knopf moved for summary disposition on the ground that the claims of accounting malpractice were barred by the applicable statute of limitations. Specifically, it argued that the malpractice claim accrued on September 15, 2009, the last date on which it rendered professional services to JGM Transportation. Lewis & Knopf maintained that JGM Transportation had until September 15, 2011, to sue and, because JGM Transportation did not sue until March 15, 2012, the malpractice claims were time-barred.

In their response, JGM Transportation and Jennings argued that, under the terms of the retention letter, Lewis & Knopf provided generalized accounting tax services that continued into the future and included any audits. It contended that, when Jennings contacted Lindsay in April

---

[2] In addition to the preparation of the 2008 tax returns, Lewis & Knopf billed JGM Transportation for additional services, including the preparation of corporate quarterly tax estimates for 2009.

[3] The trial court's dismissal of the breach of contract claim is not at issue on appeal.

2011 to discuss the audit and admitted that a mistake had been made, Lindsay in effect "continued to provide general accounting tax services" to JGM Transportation. JGM Transportation maintain on that basis that their claims were timely.

The court determined that the services provided by Lewis & Knopf were discrete services. Accordingly, any claim for malpractice accrued on the date the service concluded, which in this case was the day Lindsay filed the 2008 tax returns, September 15, 2009. Because JGM Transportation and Jennings did not sue for malpractice until more than two years after that date, the court concluded that the malpractice claims were untimely and dismissed them in an order entered in July 2013.

JGM Transportation and Jennings now appeal in this Court.

## II. SUMMARY DISPOSITION

## A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). The court reviewing a motion under MCR 2.116(C)(7) examines the pleadings and supporting evidence in the light most favorable to the nonmoving party to determine whether the undisputed facts show that the moving party has immunity. *Id.* If there is no factual dispute, whether the plaintiff's claim is time-barred is a matter of law for the court. *Id.* at 523.

## B. ANALYSIS

Claims of professional malpractice, including accounting malpractice, must be brought within two years of the date that the claim first accrued. MCL 600.5805(1) and (6); see *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 333; 535 NW2d 187 (1995). Generally, for purposes of determining the accrual of claims of professional malpractice, courts apply the last treatment rule. *Kincaid*, 300 Mich App at 524-525 (explaining that the Legislature codified the common-law last treatment rule with the enactment of MCL 600.5838). Under the last treatment rule, a claim of professional malpractice first accrues "at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838(1). Nevertheless, a professional malpractice action may be commenced "within 6 months after the plaintiff discovers or should have discovered the existence of the claim . . . ." MCL 600.5838(2).

In *Levy v Martin*, 463 Mich 478; 620 NW2d 292 (2001), our Supreme Court addressed the application of the last treatment rule to accounting malpractice claims. In *Levy*, the defendants prepared annual tax returns for the plaintiff from 1974 to 1996. *Id.* at 480-481. In August 1997, the plaintiff sued his accountants for the negligent preparation of his 1991 and 1992 tax returns. *Id.* at 481. The Supreme Court determined that the plaintiff's claims were not time-barred; it reasoned that the continued and yearly preparation of tax returns constituted the matters out of which the claim for malpractice arose and stated that "it is clear here that plaintiffs, rather than receiving professional advice for a specific problem, were receiving generalized tax preparation services from defendants." *Id.* at 489. The Court noted, however,

that the result might have been different if the defendants had presented evidence that the annual tax preparations constituted "discrete transactions":

> We note that the result may have been different if defendants had come forward with documentary evidence that each annual income tax preparation was a discrete transaction that was in no way interrelated with other transactions. Accordingly, this opinion does not mean, for example, that if an accountant prepared income tax returns for a party annually over a period of decades, the statute of limitations for alleged negligence in preparing the first of these tax returns would not run until the overall professional relationship ended. [*Id.* at 490 n 19.]

Lewis & Knopf argue that JGM Transportation and Jennings retained it to provide a discrete transaction and that it ceased providing services related to the preparation of the 2008 tax returns on September 15, 2009. By contrast, JGM Transportation and Jennings argue that they retained Lewis & Knopf to provide generalized accounting services, which Lewis & Knopf continued to provide until early 2011 when, after being contacted by Jennings, Lindsay reviewed the tax filings and admitted that there were errors in the 2008 tax return. Applying *Levy* to the facts in this case, we conclude that the trial court correctly determined that the undisputed evidence showed that Lewis & Knopf structured the tax preparation services as discrete transactions that ended with its written notice that the engagement had been concluded. As such, JGM Transportation and Jennings had to sue within two years of the completion of the tax preparation service at issue.

Unlike the situation in *Levy*, Lewis & Knopf presented evidence that it did not perform ongoing and generalized accounting services to JGM Transportation and Jennings. Lewis & Knopf's retention letter specifically provided that "the Company has asked our firm to perform 'other accounting services' for the year ended December 2008." It then filed the 2008 tax returns on September 15, 2009. In the October 2009 invoice related to the services rendered, Lewis & Knopf stated: "This concludes our engagement for the preparation of your 2009 financial statements and tax returns." Thereafter, JGM Transportation replaced Lewis & Knopf with Pagac and it was Pagac who prepared the 2009 tax returns and assisted JGM Transportation with the audit related to the 2008 return. Thus, the undisputed evidence showed that the tax preparation services at issue were discrete services that ended at the very latest on October 6, 2009, which was the point at which Lewis & Knopf stated that it was no longer serving JGM Transportation and Jennings in a professional capacity with respect to the matters out of which the claims for malpractice arose. Further, at the very latest, JGM Transportation and Jennings knew, or should have known, of a potential cause of action by May 23, 2011, when the IRS concluded its audit. Because JGM Transportation and Jennings did not sue within two-years of the accrual date or within six months of the date that they knew or should have known of their claims, their claims were not timely. MCL 600.5838(2); MCL 600.5805(1) and (6).

Contrary to the assertions by JGM Transportation and Jennings on appeal, the evidence presented on the motion does not support an inference that there was an ongoing engagement for general accounting services that continued until April 2011. JGM Transportation and Jennings argue that the language of the retention letter evidenced the parties' intent that Lewis & Knopf would provide general accounting services indefinitely until the relationship was terminated in

writing, or at the very least, through IRS audit proceedings. However, the plain language of the agreement does not support such a broad interpretation and, in any event, no accounting services were actually provided after September 15, 2009, related to the preparation of the 2008 tax return. The retention letter addressed the possibility of an audit, however, the letter clarified that Lewis & Knopf could represent JGM Transportation in an audit "if" JGM Transportation so desired. It is undisputed that Jennings did not engage Lewis & Knopf to represent him or his company during the audit.

Further, we do not agree that Lindsay's limited contact with Jennings in April 2011 constituted the continued provision of professional services. Jennings averred that, when he contacted Lindsay about the audit in early 2011, this action was consistent with the " 'general accounting tax services' he was providing to me and my company." He further stated that after this phone call he "decided to go with another CPA, Richard Pagac, Jr., to handle the audit." However, Jennings' affidavit is inconsistent with his deposition in which he acknowledged that, by the time he contacted Lindsay about the IRS audit, he had already replaced Lewis & Knopf with Pagac as his accountant. A party may not create a factual dispute by submitting an affidavit that contradicts his deposition testimony. *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006). In any event, Lindsay's contact with Jennings in April 2011 constituted administrative or ministerial tasks insufficient to extend an accrual date. See *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 360-361; 771 NW2d 411 (2009). Consequently, the relevant accrual date was, at the latest, October 2009, which was more than two years before JGM Transportation and Jennings filed their malpractice claims.

## C. CONCLUSION

The trial court did not err when it dismissed the malpractice claims by JGM Transportation and Jennings as untimely.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly

-5-